IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SHAWN MOON, et al.,

   Plaintiffs,

    v.

THE CINCINNATI INSURANCE
COMPANY,

   Defendant.

CIVIL ACTION FILE
NO. 1:12-CV-3112-TWT

OPINION AND ORDER

This action concerns an insurance coverage dispute. The Court previously determined the Plaintiffs were not insured by the Defendant because the Plaintiffs were not acting as real estate managers of the Property at issue. Now, the Defendant seeks summary judgment on all of the Plaintiffs' remaining claims, the Plaintiffs seek summary judgment on their claims for bad faith failure to settle, and the Counterclaim Defendants ask the Court to reconsider its determination that the Plaintiffs were not insured by the Defendant.

I. Background

This action stems from the drowning of a two year-old child on March 19, 2009. The decedent drowned in a swimming pool at a home located at 3725 Bradford

Walk Trail, Buford, Georgia (the "Property").  At the time of the accident, the Property was owned but not occupied by Terry Moon.  Shawn and Tanya Moon, the Plaintiffs here, were the only adult occupants of the Property. Tanya Moon was babysitting the decedent when the accident occurred.  Terry Moon had an insurance policy through The Cincinnati Insurance Company ("Cincinnati").  The policy covered the Property and included a Lessors Liability Declarations Endorsement. The endorsement in part defines an insured as "[a]ny person ... while acting as [Terry Moon's] real estate manager."[1]

On June 8, 2009, the decedent's parents and estate filed a lawsuit against the Moons in Gwinnett County State Court (the "Underlying Lawsuit").  Cincinnati initially provided a defense to Shawn and Tanya Moon after having them sign bilateral non-waiver agreements.  However, on June 9, 2010, Cincinnati denied coverage and withdrew its defense of the Plaintiffs.  The stated reason for denial of coverage was that the policy did not cover Shawn and Tanya Moon through their relationship with Terry Moon, the Property owner and policy holder.

---

[1] This is the only provision of the Policy mentioned in the Plaintiffs' complaint. (See Compl. ¶ 8).

The Underlying Lawsuit resulted in a judgment in favor of the decedent for $9,850,000 in damages and $956,335.61 in prejudgment interest. Tanya Moon was found to be 50 percent at fault, Shawn Moon 28 percent, and Terry Moon 22 percent.

Plaintiffs Shawn and Tanya Moon filed this action on July 12, 2012, and it was removed to this Court on September 6, 2012. Their complaint asserts claims for: (1) bad faith failure to settle under the common law; (2) attorneys' fees under O.C.G.A. § 13-6-11; (3) punitive damages; (4) breach of contract; and (5) bad faith under O.C.G.A. § 33-4-6. (See Compl. ¶¶ 32-44). The Plaintiffs filed a motion for partial summary judgment on November 8, 2012, and the Defendant and Counterclaim Plaintiff Cincinnati filed a cross motion for summary judgment on November 29, 2012. The Court granted Cincinnati's cross motion and granted in part and denied in part the Plaintiffs' partial motion. [Doc. 40]. The Court ruled that the underlying complaint did not trigger Cincinnati's duty to defend. The Court further held that Shawn and Tanya Moon were not acting as real estate managers at the time of the accident, and granted Cincinnati's cross motion for summary judgment in part. ([Doc. 40], at 14). The Court left open only the issue of whether Cincinnati voluntarily undertook duties to Plaintiffs Shawn and Tanya Moon while providing them with a defense and considering settlement proposals and whether those duties support the Plaintiffs' claims for bad faith failure to settle. [Id.]

On February 15, 2013, Cincinnati filed a motion for summary judgment on all remaining claims asserted by the Plaintiffs. Counterclaim Defendants Kemi Green and Gbolahan Bankolemoh filed a motion for reconsideration of this Court's Order on summary judgment on February 22, 2013. And on March 11, 2013, Plaintiffs Shawn and Tanya Moon filed their own motion for partial summary judgment.

## II.  Legal Standards

### A.  Motion for Reconsideration Standard

The Federal Rules of Civil Procedure do not specifically authorize motions for reconsideration. Nevertheless, such motions are common in practice. Local Rule 7.2 provides that motions for reconsideration are not to be filed "as a matter of routine practice," but only when "absolutely necessary." L.R. 7.2E. A party may move for reconsideration only when one of the following has occurred: "an intervening change in controlling law, the availability of new evidence, [or] the need to correct clear error or prevent manifest injustice." Godby v. Electrolux Corp., No. 1:93-CV-0353-ODE, 1994 WL 470220, at *1 (N.D. Ga. May 25, 1994). Further, a party "may not employ a motion for reconsideration as a vehicle to present new arguments or evidence that should have been raised earlier, introduce novel legal theories, or repackage familiar arguments to test whether the Court will change its mind." Brogdon v. National Healthcare Corp., 103 F. Supp. 2d 1322, 1338 (N.D. Ga. 2000); see also Godby, 1994

WL 470220, at *1 ("A motion for reconsideration should not be used to reiterate arguments that have previously been made ... '[It is an improper use of] the motion to reconsider to ask the Court to rethink what the Court [has] already thought through-rightly or wrongly.'") (quoting Above the Belt, Inc. v. Mel Bohannan Roofing, Inc., 99 F.R.D. 99, 101 (E.D. Va.1983)) (alterations in original); In re Hollowell, 242 B.R. 541, 542-43 (Bankr. N.D. Ga. 1999) ("Motions for reconsideration should not be used to relitigate issues already decided or as a substitute for appeal ... Such motions also should not be used to raise arguments which were or could have been raised before judgment was issued.").

  B. <u>Motion for Summary Judgment Standard</u>

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond

the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

### III.  Discussion

#### A.    The Counterclaim Defendants' Motion for Reconsideration

The Counterclaim Defendants argue that the Court  erred when it determined that Plaintiffs Shawn and Tanya Moon were not acting as "real estate managers" when they were babysitting the child that drowned at the Property.  In general, a party may move for reconsideration only when one of the following has occurred: "an intervening change in controlling law, the availability of new evidence, [or] the need to correct clear error or prevent manifest injustice."  Godby, 1994 WL 470220, at *1. The Counterclaim Defendants have not shown that there has been an intervening change in law, that new evidence has emerged, or that there is a need to correct manifest injustice, and the motion for reconsideration should accordingly be denied.

The Court notes that the evidence the Counterclaim Defendants cite in their motion does not support the conclusion that the Plaintiffs were acting as real estate managers at the time of the accident.  The Plaintiffs, Shawn and Tanya Moon, were living at the Property, which was owned by Shawn's father, Terry Moon. Terry Moon stated he was trying to help his son Shawn by purchasing the Property and would therefore not penalize him for missing rent payments that were only intended to cover

the mortgage. (Counterclaim Defendants' Mot. for Reconsideration, Ex. A, at 3). Terry Moon also stated that "I think [Shawn and Tanya are], you know, trying to fix up the house to sell," and that he thought once it was fixed up Shawn and Tanya would put it on the market. (Id. at 6). However, he further stated that he "was just doing what daddy's do and trying to help my son and help them keep their - you know, keep their house and this is sort of what's happened." (Id. at 7). This testimony indicates that Terry Moon was allowing his son and his son's wife to live on the Property for their own sake, not to act as real estate managers on Terry's behalf. Additionally, when asked if Shawn and Tanya were managing the Property - not specifically acting as real estate managers - Terry Moon stated "I mean, it's their home... in that sense they're managing their home, yes." (Counterclaim Defendants' Mot. for Reconsideration, Ex. C, at 423). This testimony clearly indicates that Terry Moon believed Shawn and Tanya were living in and taking care of the Property, not acting as real estate managers for the Property. The definition of a real estate manager according to a reasonable person in an insured position does not include a father purchasing property for his son and his son's wife in order to help them out. See Gulf Ins. Co. v. Mathis, 183 Ga. App. 323, 324 (1987); Sumitomo Marine & Fire Ins. Co. of Am. v. Southern Guar. Ins. Co., 337 F. Supp. 2d 1339, 1358 (N.D. Ga. 2004) (noting that a real estate manager has a role "in renting or selling homes, [and in the]

hiring, training, and management of sales personnel."). Accordingly, the Counterclaim Defendants' motion for reconsideration should be denied.[2]

### B. Motions for Summary Judgment

The remaining motions for summary judgment center on the Plaintiffs' claim that Cincinnati improperly refused to settle and did not share the settlement offers with the Plaintiffs while it was providing a defense in the Underlying Lawsuit. The Plaintiffs argue: (1) that Cincinnati is estopped from denying coverage because it did not effectively reserve its rights with the non-waiver agreements signed by Shawn and Tanya Moon; (2) that, because Cincinnati is estopped from denying coverage, it breached its duty to defend when it withdrew its defense during the Underlying Lawsuit; (3) that Cincinnati breached its duty to defend the Plaintiffs when it did not inform them of settlement and mediation opportunities; and (4) that Cincinnati breached its duty to defend and made a bad faith refusal to settle when it did not

---

[2]In their response to the Plaintiffs' motion for partial summary judgment, the Counterclaim Defendants argue that more discovery is needed to determine whether Shawn and Tanya Moon were acting as real estate managers of the Property. The Counterclaim Defendants do not state what further discovery might be needed or what discovery could overcome Terry Moon's deposition testimony clearly indicating that the Plaintiffs were not acting as real estate managers for the Property in general. Accordingly, the Court concludes there is no need for additional discovery in this matter.

consider Shawn and Tanya Moon's interests when it received an offer of settlement while defending the Moons.

The Court concludes that the non-waiver agreements that the Plaintiffs signed unambiguously reserved Cincinnati's rights and did not estopp Cincinnati from denying coverage. The agreements stated that Cincinnati:

> may undertake the defense of Shawn D. Moon to all allegations of the [Underlying Complaint], without prejudice to the rights of the Company, if in fact it has such rights, to later contest any assertion that the insurance coverage provided by the said policies is applicable to the claims made by the Plaintiffs in said lawsuit, to deny liability under the policies with respect to the claims made by the Plaintiffs or to refuse to pay any judgment which may be rendered against Shawn D. Moon. It is further understood and agreed that no action heretofore taken by the Company, or hereafter taken by the Company, shall be construed as a waiver by the Company of any of the terms or conditions of the said policies of insurance or of any rights which the Company may have to deny liability or obligation to Shawn D. Moon under the said policies.

(Def.'s Mot. for Summ. J., Ex. B, Tait Decl. Ex. A). Tanya Moon signed an identical agreement with her name in the place of Shawn's. (Id. Ex. B).

In State Farm Fire and Cas. Co. v. Walnut Avenue Partners, LLC, 296 Ga. App. 648 (2009), the court concluded that the defendant insurance company had properly reserved its rights. The defendant had the potentially insured sign non-waivers stating that the defendant may defend any claim arising out of the underlying event and that such "action shall not waive any right [the defendant] may have to deny any obligation under the policy contract." Id. at 654. The language in that reservation of

rights is nearly identical to the language here. Further, Shawn and Tanya Moon both signed the reservations of rights even though Georgia law does not require an insured's signature on a reservation of rights form. See id. There is nothing ambiguous about Cincinnati's reservation of rights here. The Plaintiffs' reliance on World Harvest Church, Inc. v. GuideOne Mut. Ins. Co., 287 Ga. 149 (2010), is therefore misplaced because, in that case, the insurer did not reserve its rights when it agreed to provide a courtesy defense. See id. at 153 ("Where, as here, there was no effective reservation of rights, whether the insurer was estopped from asserting noncoverage depends on whether, with actual or constructive knowledge of noncoverage, it assumed or continued the defense of a suit against its insured."); id. at 156 ("where, as here, an insurer assumes and conducts an initial defense without effectively notifying the insured that it is doing so with a reservation of rights, the insurer is deemed estopped from asserting the defense of noncoverage."). Because Cincinnati effectively reserved its rights before providing an initial defense to the Plaintiffs, the Court concludes that Cincinnati is not estopped from denying coverage to Shawn and Tanya Moon.

The Plaintiffs argue that, even in the absence of a duty to defend, Cincinnati breached a duty to the Plaintiffs under the voluntary undertaking doctrine by refusing to consider settlement offers when providing the courtesy defense to the Plaintiffs.

The Plaintiffs assert that Cincinnati knew it would deny coverage but nevertheless provided a temporary defense. According to the Plaintiffs, Cincinnati was not forthcoming when it stated in the non-waiver agreements that the Moons signed that "the Company is uncertain of its rights and obligations." (See Pls.' Mot. for Partial Summ. J., Ex. H, at MS1074). This is because Cincinnati had noted in its claims diary that Cincinnati should offer a courtesy defense but "strictly deny any coverage." (See id. Ex. B, MS0007). The Plaintiffs suggest that because Cincinnati knew it would not provide coverage and nevertheless offered a courtesy defense, it only provided the courtesy defense to further its own ends. In the claims diary, Cincinnati noted that the Plaintiffs might "do whatever it takes to get out [of the lawsuit] *i.e.* - confess to a judgment, default judgment, assign any claims, etc." (Id.) The Plaintiffs contend they would have agreed to a settlement arrangement in the Underlying Lawsuit that might have exposed Cincinnati and Terry Moon to increased liability.

The causes of action supporting the Plaintiffs' arguments that Cincinnati breached a duty under the voluntary undertaking doctrine are their claims for Bad Faith Failure to Settle Under the Common Law and Bad Faith Under O.C.G.A. § 33-4-6. Cincinnati argues that it had no duty to settle because the Plaintiffs were never insured and there is no duty to settle on behalf of non-insureds. The Court agrees.

The Plaintiffs' causes of action cannot survive summary judgment because the Plaintiffs were not insureds under Cincinnati's policy.[3]

With respect to the Plaintiffs' claim under the common law, "[a]n insurer may be liable for the excess judgment entered against its insured based on the insurer's bad faith or negligent refusal to settle a personal claim within the policy limits." Kingsley v. State Farm Mut. Auto. Ins. Co., 353 F. Supp. 2d 1242, 1247 (N.D. Ga. 2005) (quoting Cotton States Mut. Ins. Co. v. Brightman, 276 Ga. 683 (2003) (internal marks omitted)). "Judged by the standard of the ordinarily prudent insurer, the insurer is negligent in failing to settle if the ordinarily prudent insurer would consider choosing to try the case as creating an unreasonable risk." Id. (quoting Cotton States, 276 Ga. at 683)(internal marks omitted).  By its very terms, this statement of the law for bad faith refusal to settle requires that the plaintiff have been an insured.  The Plaintiffs do not cite a case holding otherwise. The Plaintiffs here were not insured by

---

[3]The Plaintiffs rely heavily on the California case of Mosier v. S. California Physicians Ins. Exchange, 63 Cal. App. 4th 1022 (1998).  That case is not applicable here because it was a case where a plaintiff brought fraud, breach of fiduciary duty, and conspiracy claims against an insurance company that had schemed to provide a bogus courtesy defense in order to convince an uninsured doctor to admit liability. Here, the Plaintiffs are not bringing claims for fraud or conspiracy or breach of fiduciary duty, but for bad faith failure to settle.  There were no allegations of bad faith failure to settle in Mosier.

Cincinnati and therefore cannot succeed on their claim for bad faith failure to settle under the common law.

The same reasoning applies to the Plaintiffs' claim under O.C.G.A. § 33-4-6. That statute provides that, "[i]n the event of a loss which is covered by a policy of insurance and the refusal of the insurer to pay the same within 60 days after a demand has been made by the holder of the policy and a finding has been made that such refusal was in bad faith, the insurer shall be liable to pay such holder, in addition to the loss, not more than 50 percent of the liability of the insurer..." O.C.G.A. § 33-4-6(a). By its explicit terms, the statute only applies to "a loss *which is covered by a policy of insurance*." Id. (emphasis supplied). Here, the Plaintiffs were not insured by Cincinnati so any loss that Cincinnati did not cover was not covered by a policy of insurance. Accordingly, O.C.G.A. § 33-4-6 does not apply to the Plaintiffs' arguments. See JLM Enterprises, Inc. v. Houston General Ins. Co., 196 F. Supp. 2d 1299, 1314 (S.D. Ga. 2002) ("[p]enalties for bad faith are not authorized where the insurance company has any reasonable ground to contest the [plaintiff's coverage]."). Cincinnati had reasonable grounds to contest coverage because it did not believe Shawn and Tanya Moon were acting as "real estate managers" at the time of the accident. Accordingly, Cincinnati cannot be liable for bad faith. Its motion for

summary judgment should be granted on the Plaintiffs' remaining claims, and the Plaintiffs' motion should be denied.[4]

## IV. Conclusion

For the reasons set forth above, Defendant The Cincinnati Insurance Company's Motion for Summary Judgment [Doc. 42] is GRANTED, Plaintiffs Shawn Moon and Tanya Moon's Motion for Partial Summary Judgment [51] is DENIED, and Counterclaim Defendants Gbolahan Bankolemoh and Kemi Green's Motion for Reconsideration [Doc. 43] is DENIED.

SO ORDERED, this 23 day of September, 2013.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge

---

[4]The Plaintiffs' complaint also included a claim for breach of contract. Because the Court concludes they were not insured by the Defendant, their breach of contract claim cannot survive summary judgment. Likewise, because the Plaintiffs cannot prevail on any of their claims, their causes of action for Attorney's Fees and Punitive Damages cannot survive summary judgment.